UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEANETTE C., | ) |
| Plaintiff, | ) |
| | ) No. 22-cv-5315 |
| v. | ) |
| | ) Magistrate Judge Keri L. Holleb Hotaling |
| MARTIN J. O'MALLEY, Commissioner | ) |
| of the Social Security Administration, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeanette C.[1] appeals the decision of the Defendant Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her disability benefits. For the reasons set forth below, Plaintiff's motion for summary judgment (Dkt. 18)[2] is DENIED, and the Commissioner's motion for summary judgment (Dkt. 21) is GRANTED. The Commissioner's decision is affirmed.

### I. BACKGROUND

#### A. Procedural History

On April 9, 2020, Plaintiff filed an application for disability insurance benefits ("DIB"), alleging disability beginning on December 31, 2017. (R.[3] 14, 277-80.) Plaintiff's application was denied initially and upon reconsideration. (R. 67-83, 85-106.) An Administrative Law Judge ("ALJ") held an Administrative Hearing and subsequently issued a January 26, 2022 decision finding Plaintiff not disabled. (R. 14-25.) On July 25, 2022, the Appeals Council denied Plaintiff's

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2] Plaintiff filed a memorandum in support of summary remand (Dkt. 18), which the Court construes as a motion for summary judgment.

[3] The Administrative Record appears at Docket No. 12 and will be referred to as "R."; a supplement to the Administrative Record appears at Docket No. 17 and will be referred to as "S.R."

request for review (R. 1-6), rendering the ALJ's decision the final decision of the Commissioner, reviewable by the district court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2004). Plaintiff filed this lawsuit seeking review of the ALJ's decision. (Dkt. 1.)

### B. The ALJ's Decision

The ALJ analyzed Plaintiff's claim following the SSA's usual five-step sequential evaluation process to determine whether Plaintiff was disabled during the relevant period. (R. 16-29); *see also* 20 C.F.R. § 404.1520(a). The ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022 and had not engaged in substantial gainful activity since her alleged December 31, 2017 disability onset date. (R. 14, 16.) At step two, the ALJ concluded that Plaintiff had severe and non-severe impairments, which the ALJ listed and discussed. (R. 16.) The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the SSA's listings of impairments (a "Listing") under 20 C.F.R. 404, Subpart P, Appendix 1. (R. 16-19.)

Before step four, the ALJ determined Plaintiff retained the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b)," with postural, environmental, and interpersonal limitations discussed in more detail below, as well as a limitation to "simple work, no work with the public, no production work, and no tandem tasks." (R. 22-23.) In setting that RFC, the ALJ explained how the limitations she chose accommodated Plaintiff's impairments. (R. 22.) At step four, the ALJ concluded Plaintiff would be unable to perform past relevant work. (R. 23-24.) At step five, the ALJ found that, considering Plaintiff's education, age, work

2

Redoing

experience, and RFC, jobs exist in significant numbers in the national economy that she could perform. The ALJ therefore concluded that Plaintiff was not disabled.

### C. Standard of Review

On review, the Court does not "merely rubber stamp the ALJ's decision." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). However, "[t]he findings of the Commissioner [] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Prill*, 23 F.4th at 746. Substantial evidence is "more than a mere scintilla," and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "When reviewing a disability decision for substantial evidence," the Court does "'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [the Court's] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Thus, if there is substantial evidence in support of the determination, the Court must affirm even if "reasonable minds could differ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018) (citation and quotation marks omitted).

## II. ANALYSIS

Plaintiff argues (1) the ALJ's RFC is incomplete because it fails to "address all hearing limitations"; and (2) the ALJ erred in rejecting her reports of her subjective symptoms. The Court disagrees and finds more than a mere scintilla of evidence supports the ALJ's decision. The Court accordingly affirms.

### A. The ALJ's RFC Was Supported by Substantial Evidence

The ALJ found that Plaintiff had the severe impairments of severe hearing loss; migraine headaches; asthma; fibromyalgia; depression; anxiety; and cognitive deficits, along with several

3

non-severe impairments not relevant to the Court's analysis. (R. 16-17.) Plaintiff directly challenges the ALJ's RFC determination only as it relates to her hearing loss.

Plaintiff incurred hearing loss from noise exposure in prior factory work. (R. 20.) The ALJ noted that Plaintiff reported difficulty hearing in social gatherings and hears better in quiet settings, and a treating physician recommended that Plaintiff "avoid[] excessive noise exposure." (R. 20, 704.) In July 2020, audiometric testing results showed significant hearing loss in both ears. (*Id.*) As a result, Plaintiff now wears a hearing aid in her right ear and a speaker in her left ear. (*Id.*) An October 2021 audiological examination showed profound to moderately severe hearing loss in Plaintiff's right ear and profound mixed hearing loss in her left ear, although examination notes indicated Plaintiff was able to use clear and intelligible speech to communicate. (R. 20.) The ALJ concluded (and Plaintiff does not contest) that her hearing loss does not equal the relevant listing, Listing 2.10. (R. 17.)

As it relates to Plaintiff's hearing loss, the ALJ in her RFC analysis found Plaintiff should avoid "concentrated exposure to loud noise, and construction" and, "due to hearing loss," should be "limited to occasional telephone communication and fine hearing," "no work with the general public as part of routine job duties, and only occasional work with coworkers and supervisors," and "no tandem tasks." (R. 19.) Ultimately, given the entirety of Plaintiff's RFC, her age, education, and work experience, the ALJ determined Plaintiff could perform three light work jobs, which the Vocational Expert ("VE") testified would be at or below moderate noise levels.[4] (R. 59-62.)

Plaintiff's attack on the hearing-related components of the RFP is multi-stepped. First, she argues the transcript from the video Administrative Hearing in this case "painfully illustrates" her

---

[4] The ALJ also asked the VE to identify sedentary jobs Plaintiff could perform, and the VE identified three sedentary jobs that fall within the noise restriction set in the RFP. (R. 55-57.)

4

hearing difficulties because the ALJ increased her speaking volume, while Plaintiff sought to "get closer to" the phone speaker to hear better, yet she still had to ask that questions be repeated or for her son's assistance to understand. (Dkt. 18 at 9.) This, she argues, is consistent with the October 2021 audiological testing, which revealed only twenty-four percent word recognition in Plaintiff's left ear and fifty-two percent word recognition in her right ear.[5] (*Id*.) Next, because "occasionally" in the context of an RFC means "from very little" to "up to one-third of the time," SSR 83-10, 1983 WL 31251, at *5, Plaintiff extrapolates that, *if* she were to spend a third of her day communicating, and *if* she recognizes barely more than half of the words communicated to her in that time (as she insists testing and the hearing transcript support), she would "fall off task" for half of all communication time, which she tallies as "15.8 percent of the total [work] day." (Dkt. 18 at 9-10.) This, she concludes, would be work preclusive because it is above the off-task percentage the VE testified that employers generally tolerate. (*Id*. at 10-11.)

The Commissioner in part defends the RFC with reference to the state agency reviewers, who opined that "[n]o significant hearing or speech limitations is established with use of hearing aides," and "work requiring extensive verbal communication as a critical demand cannot be done." (Dkt. 22 at 6; *see also* R. 78, 82, 97, 104.) Plaintiff responds that the ALJ did not cite that portion of the state agency consultants and, in fact, expressly deemed their opinions unpersuasive. (Dkt. 23 at 4.) While the ALJ might have intended to discount only the portions of the state agency consultants relating to Plaintiff's physical limitations (*see* R. 22 (stressing ALJ's disagreement with the consultants' failure to add exertional limitations)), the ALJ's phrasing is unclear. (R. 22.) The Court accordingly assumes the ALJ did not find persuasive the portion of the consultants' opinions in which they address Plaintiff's hearing loss.

---

[5] Plaintiff does not indicate whether this was with or without hearing aids, but the portion of the examination for "Aided" word recognition is not populated. (R. 1009.)

That said, as the Commissioner points out, the ALJ addressed Plaintiff's audiological testing, and the transcript of the video Administrative Hearing does not support that Plaintiff's hearing loss would cause her to be off task more than half of the communication time. (Dkt. 22 at 5; R. 33-54.) Although Plaintiff occasionally sought repetition or assistance within the Administrative Hearing, the ALJ observed that Plaintiff was able to answer questions and explain her answers without significant difficulty at the hearing. (R. 19.) The ALJ, moreover, addressed Plaintiff's own report that lower background noise benefitted her. (R. 20.) And, to accommodate the physician recommendation for Plaintiff to avoid excessive noise, the ALJ included that limitation within the RFC, and all jobs the VE mentioned during the Administrative Hearing are at either moderate or quiet noise levels, as characterized by the SSA. (R. 59-62.) Despite any imperfections in the delivery, the Court can follow the ALJ's logic in setting the RFC as to Plaintiff's hearing loss, even if the Court might have reached a different conclusion on the record evidence. *See Cody M. v. O'Malley*, No. 1:23-CV-366-MG-JRS, 2024 WL 1326489, at *5 (S.D. Ind. Mar. 28, 2024) (noting that ALJ alone must determine RFC and finding ALJ's assessment regarding noise level was supported by substantial evidence where ALJ "grappl[ed] with" evidence regarding hearing loss, found claimant's "alleged symptoms overstated[,]" and determined claimant "require[d] some noise level limitations in the RFC").

Even if the ALJ's analysis was flawed, Plaintiff has not pointed to any medical opinion with more restrictive limitations than those set by the ALJ in Plaintiff's RFC. *See Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'") (alteration in original) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)). Likewise, Plaintiff has failed to demonstrate any non-harmless error. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). Accordingly, the Court will not remand on this ground.

## C. The ALJ's Subjective Symptom Assessment Is Not Patently Wrong

Plaintiff next argues that, in evaluating her subjective allegations, the ALJ drew improper and unsupported conclusions from her daily activities and the nature and perceived efficacy of Plaintiff's treatments as to her fibromyalgia and mental impairments, including anxiety. (Dkt. 18 at 11-15.)

A mere diagnosis of an impairment does not typically entitle a claimant to benefits. *Thompson v. Colvin*, 575 F. App'x 668, 677 (7th Cir. 2014) ("[A] [fibromyalgia] diagnosis, however, does not entitle [a claimant] to benefits."). Nor are "[a] claimant's assertions of pain, taken alone, [] conclusive of a disability." *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (citing 42 U.S.C. § 423(d)(5)(A)). A claimant must show her symptoms are disabling. *See Susan G. v. Kijakazi*, No. 20 C 6110, 2023 WL 2525495, at *7 (N.D. Ill. Mar. 15, 2023) ("Plaintiff, however, does not explain how these findings and diagnoses amount to evidence that allegations of *disabling* [fibromyalgia] pain.").

"When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Charles B. v. Saul*, No. 19-cv-1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020) (citing 20 C.F.R. § 404.1529(c); 20 C.F.R. § 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5, *7-8 (Oct. 25, 2017)); *see also* SSR 12-2p, 2012 WL 3104869, at *5 (July 25, 2012) (providing same factors for fibromyalgia symptoms). "As long as an ALJ gives specific reasons supported by the record, we will not overturn [this] determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). To warrant remand, the ALJ's assessment must be "patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

7

Here, the ALJ's decision contains explanation and support. The ALJ recounted Plaintiff's reports of trouble with remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others. (R. 18-19.) The ALJ, though, noted contrasting facts, including that Plaintiff babysits her minor nephew (which she does for multiple days per week), cares for her disabled minor son, handles her own personal hygiene, cooks, cleans, uses public transportation, shops in stores, independently manages her finances, watches television, and spends time with others. (R. 19, 40-41 (indicating she babysits four days per week, for a total of approximately thirty hours).) And, although Plaintiff at times complained of joint tenderness and fibromyalgia flares, the ALJ indicated that Plaintiff generally presented at physical examinations with normal strength and gait and that an increase in her prescription for Cymbalta led to at least some improvement in symptoms. (R. 21.) At a consultative examination, a straight leg test was negative, and plaintiff had normal joint and musculoskeletal range of motion. (*Id*.) Plaintiff's medications cause shakiness, drowsiness, and weight gain but helped to stabilize her migraines, mood, and asthma. (R. 20, 21.) For her mental impairments, although Plaintiff presented at appointments with some tearful and anxious affect and a depressed mood, she was cooperative and alert and demonstrated normal thought process and fair insight. (R. 21.) Plaintiff attended therapy and took medications that helped stabilize her mood. (R. 18-19, 21.) During the Administrative Hearing, Plaintiff was responsive to the questions asked. (R. 19.)

The ALJ referenced medical records and findings, Plaintiff's statements, and opinion evidence over four pages of her opinion (R. 19-23), and then concluded Plaintiff's "allegations of debilitating symptoms" were not entirely consistent with other evidence in the record because of the successful resolution of symptoms through treatment, the extent of Plaintiff's daily activities, and the generally benign findings at Plaintiff's physical and mental status examinations. (R. 23.) Nevertheless, the ALJ accepted Plaintiff's allegations regarding her symptoms so far as to restrict

8

her to light work with additional limitations despite the State agency consultants' determinations that Plaintiff could work at any exertional level. (R. 21.)

Plaintiff picks at threads of the ALJ's decision, separately attacking the ALJ's analysis of her course of treatment, medical records, and daily activities. Looking at the ALJ's decision as a whole, as this Court is obligated to do, *see Marshall v. O'Malley*, No. 22-cv-662-JDP, 2024 WL 1327360, at *3-4 (W.D. Wis. Mar. 28, 2024) ("Courts must read the ALJ's decision as a whole, and may not discount the ALJ's reasoning simply because it appears elsewhere in the decision.") (cleaned up), the ALJ's opinion is supported by some explanation and support and therefore is not "patently wrong."

Noting various symptoms Plaintiff had complained of, such as hearing loss, "fibro fog, confusion, and insomnia" that remained despite treatment, and joint pain and fibromyalgia tender points, Plaintiff first queries "[w]hat treatment was generally successful?" (Dkt. 18 at 12.) But the ALJ explicitly answered that question—Plaintiff's migraines, asthma, and mood had been stabilized, at least at times, with treatment. (R. 20, 21.) Plaintiff also had reported an improvement in her fibromyalgia symptoms after an increase in her prescription medication. (R. 21.) The ALJ, moreover, recognized Plaintiff's reports of the symptoms mentioned above and contrasted them with other evidence in the record, such as normal strength and gait and other normal findings upon examination. (R. 21, 22.) The ALJ sufficiently explained and supported her decision. *See Susan G.*, 2023 WL 2525495, at *7-8 (explaining that "ALJ is entitled to consider objective evidence" such as "normal gait, normal neurological findings, negative straight leg raise, and normal range of motion" as "factor in evaluating a plaintiff's subjective symptom reports" of fibromyalgia pain); *Matthew M. v. O'Malley*, No. 3:23-cv-50020, 2024 WL 1530393, at *6-7 (N.D. Ill. Apr. 9, 2024) (finding ALJ's subjective symptom analysis was adequately supported with evidence and explanation where ALJ evaluated, *inter alia*, claimant's alleged symptoms of panic attacks and

9

depression along with objective records showing improvement with medication and therapy, and normal mental health examination findings despite ongoing reports of PTSD symptoms).

Plaintiff next labels her own activities (which she concedes included babysitting her three-year-old nephew four days a week although her son assists her with lifting; preparing small meals; and completing household tasks like washing dishes and sweeping and mopping with difficulty and with breaks) "extremely limited and family-supported." (Dkt. 18, at 5, 13.) She protests, "what about [those activities] was inconsistent with her allegations?" (*Id*. at 13.) But an ALJ does "not err in factoring [a claimant's] activities, including babysitting [], into her analysis." *John B. v. Kijakazi*, No. 20-cv-50137, 2023 WL 4762602, at *6 (N.D. Ill. July 26, 2023). Here, the ALJ properly examined Plaintiff's activities for consistency with her alleged symptoms, not as a proxy for the ability to work full-time, and the analysis thus was not "patently wrong." *See Tutwiler v. Kijakazi*, 87 F.4th 853, 858–59 (7th Cir. 2023) (holding that ALJ's evaluation of subjective symptoms was not "patently wrong" where ALJ noted, *inter alia*, claimant's medical records showed symptoms that "were sometimes debilitating but other times were not," and her daily activities such as bathing herself and chores "stood in tension with her assertion that" her symptoms prevented work); *Jill L. v. O'Malley*, No. 21-cv-4306, 2024 WL 735102, at *4 (N.D. Ill. Feb. 16, 2024) (noting that, where ALJ did not impermissibly "equate the ability to care for a child with the ability to perform full-time work but" instead "considered it as a factor that undermined Plaintiff's allegations of debilitating and total disability[,]" ALJ's "determination was not patently wrong"); *see also* SSR 16-3p, 2017 WL 5180304, at *5, *7-8; *Green v. Saul*, 781 F. App'x. 522, 526 (7th Cir. 2019) ("ALJs are tasked with reviewing the evidence . . . and assessing whether a claimant is exaggerating . . . and reviewing daily-living activities is an important part of that evaluation.").

10

Finally, Plaintiff asserts that it was "not enough" for the ALJ to refer to her earlier "summary of medical records" when presenting her conclusion that "benign findings" indicated that Plaintiff's symptoms were less severe than Plaintiff described. But this overstates an ALJ's obligations. The Seventh Circuit has decisively and repeatedly rejected the premise that an ALJ must either "rehash every detail each time [s]he states conclusions on various subjects." *Gedatus*, 994 F.3d at 903; *see also Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (criticizing claimant for "putting the ALJ's written decision under a microscope and then flyspecking it" because "[t]ime and again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements"). Nor must an ALJ "address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or change of reasoning." *Warnell*, 97 F.4th at 1053. Even so, the ALJ repeatedly mentioned "benign" examination findings within her analysis of Plaintiff's medical background (R. 19 (benign findings on mental status examinations), 21 (benign respiratory examinations), 22 (generally benign findings on physical examinations, although record supports some limitations in functioning due to symptoms)) and analyzed Plaintiff's described symptoms along with other categories of evidence set forth within SSR 16-3p before reaching her conclusions. (R. 19-23.)

In short, the ALJ provided specific reasons supported by the record for finding Plaintiff's subjective reports not entirely consistent with the overall record. *See* 20 C.F.R. § 404.1529(c). Even if the ALJ erred in some fashion in her analysis on one or more of the above factors, there is substantial evidence supporting her partial rejection of Plaintiff's subjective symptoms. *Tutwiler*, 87 F.4th at 858-59 ("Although the ALJ might have erred in his analysis of some factors, enough of them had adequate supporting evidence for this court to uphold his credibility determination."). Plaintiff's disagreement with the ALJ's findings that Plaintiff's general symptoms were not as limited as Plaintiff self-reported ultimately amounts to an improper invitation for the Court to

reweigh the record evidence, which the Court must decline. *See Zoch*, 981 F.3d at 602 (emphasizing "even if reasonable minds could differ" on rejection of claimant's testimony, "we will not reweigh evidence or substitute our judgment for the ALJ's"). Accordingly, remand as to the ALJ's subjective symptom evaluation is not warranted.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 18) is denied, and the Commissioner's motion (Dkt. 21) is granted. The decision of the Commissioner is affirmed.

ENTERED: May 21, 2024

Hon. Keri L. Holleb Hotaling
United States Magistrate Judge